2016 WL 3081954
United States Court of Appeals,
Eleventh Circuit.

In re: Ricardo Pinder, Jr., Petitioner.

No. 16-12084-J
|
June 1, 2016

Application for Leave to File a Second or Successive Motion to Vacate, Set Aside, or Correct Sentence, 28 U.S.C. § 2255(h)

Before TJOFLAT, WILSON, and MARTIN, Circuit Judges.

**Opinion**

BY THE COURT:

**\*1** Ricardo Pinder, Jr., seeks authorization to file a second or successive 28 U.S.C. § 2255 motion. He can file such a motion only if the motion is "certified ... by a panel of the appropriate court of appeals to contain" either:

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." Id. § 2244(b)(3)(C).

Pinder was sentenced under 18 U.S.C. § 924(c), which requires a higher prison sentence whenever a defendant uses a firearm during a "crime of violence." 18 U.S.C. § 924(c)(1)(A). The statute gives more than one definition of "crime of violence," including any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. § 924(c)(3)(B). Pinder claims this definition is unconstitutional in light of Johnson v. United States, 576 U.S. ——, 135 S. Ct. 2551 (2015), which held that the phrase

"involves conduct that presents a serious potential risk of physical injury to another" in 18 U.S.C. § 924(e)(2)(B)(ii) is unconstitutionally vague. The Supreme Court has held that the rule announced in Johnson applies retroactively on collateral review. See Welch v. United States, 578 U.S. ——, ——, 136 S. Ct. 1257, 1268 (2016).

Our Court hasn't decided if Johnson applies to § 924(c)(3)(B). However, the language in § 924(c) and § 924(e) is very similar. And both § 924(c) and § 924(e) are penal statutes, meaning they both require higher sentences once a court decides that an offense is a "crime of violence." Also, for both statutes this question is decided " 'categorically'—that is, by reference to the elements of the offense, and not the actual facts of [the defendant's] conduct." United States v. McGuire, 706 F.3d 1333, 1336 (11th Cir. 2013) (O'Connor, J.). As the Supreme Court has explained, "[t]he vagueness of [§ 924(e)(2)(B)(ii)] rests in large part on its operation under the categorical approach." Welch, 136 S. Ct. at 1262. This "approach required courts to assess the hypothetical risk posed by an abstract generic version of the offense." Id. "It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." Johnson, 135 S. Ct. at 2558. Though § 924(c) is phrased a bit differently from § 924(e), the § 924(c) language also requires courts to decide if the offense in question "naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense." Leocal v. Ashcroft, 543 U.S. 1, 10, 125 S. Ct. 377, 383 (2004).

**\*2** Given the similarity between § 924(c) and § 924(e), other Courts of Appeals have authorized successive § 2255 petitions based on Johnson in § 924(c) cases. See, e.g., Freeman v. United States, No. 15-3687 (2d Cir. Jan. 26, 2016); In re Chapman, No. 16-246 (4th Cir. May 3, 2016); Ruiz v. United States, No. 16-1193 (7th Cir. Feb. 19, 2016) (rejecting the argument "that § 924(c)(3)(B) differs enough from [§ 924(e)(2)(B)(ii)]'s residual clause that it was not invalidated by Johnson"). And though the Sixth Circuit has held that § 924(c)(3)(B) is not unconstitutionally vague, see United States v. Taylor, 814 F.3d 340, 379 (6th Cir. 2016), the Seventh and Ninth Circuits have held that identically worded language in 18 U.S.C. § 16(b) is unconstitutionally vague, see United States v. Vivas-Ceja, 808 F.3d 719, 723 (7th Cir. 2015); Dimaya v. Lynch, 803 F.3d 1110, 1120 (9th Cir. 2015).

In short, the law is unsettled on whether the rule announced in Johnson invalidates Pinder's sentence. What's clear however

Appellate Case: 16-2207 Page: 1 Date Filed: 06/13/2016 Entry ID: 4411259

is that Pinder has made a prima facie showing that his motion "contain[s] ... a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255(h); see also In re Joshua, 224 F.3d 1281, 1282 n.2 (11th Cir. 2000) (per curiam) (noting that "the merits of this case ... are not relevant to whether Joshua can obtain permission to bring a second or successive § 2255 motion to vacate"). Whether that new rule of constitutional law invalidates Pinder's sentence must be decided in the first instance by the District Court. [1] Nothing in our order binds that court, which must decide every aspect of Pinder's claim "fresh, or in the legal vernacular, de novo." Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1358 (11th Cir. 2007). Also, whatever

> determination that the district court makes about whether [Pinder] has satisfied the requirements for filing a second or successive motion, and any determination it makes on the merits, if it reaches the merits, is subject to review on appeal from a final judgment or order if an appeal is filed. Should an appeal be filed from the district court['] determination, nothing in this order shall bind the merits panel in that appeal.

In re Moss, 703 F.3d 1301, 1303 (11th Cir. 2013).

[1] Pinder's § 924(c) sentence appears to have been based on a conviction for conspiracy to commit Hobbs Act robbery. "To convict on a Hobbs Act conspiracy, the government must show that (1) two or more people agreed to commit a Hobbs Act robbery; (2) that the defendant knew of the conspiratorial goal; and (3) that the defendant voluntarily participated in furthering that goal." United States v. Ransfer, 749 F.3d 914, 930 (11th Cir. 2014). This Court "has not decided that a Hobbs Act robbery categorically qualifies as a 'crime of violence' for the purposes of § 924(c)" after Johnson. United States v. Collins, No. 1:14-CR-302, 2016 WL 1639960, at *26 (N.D. Ga. Feb. 9, 2016), report and recommendation adopted, No. 1:14-CR-302, 2016 WL 1623910 (N.D. Ga. Apr. 25, 2016). We also haven't decided this question for conspiracy to commit Hobbs Act robbery. At least two district courts have held that conspiracy to commit Hobbs Act robbery is not a "crime of violence" after Johnson. See United States v. Luong, No. 2:99-00433, 2016 WL 1588495, at *3 (E.D. Cal. Apr. 20, 2016); United States v. Edmundson, No. PWG-13-15, 2015 WL 9311983, at *6 (D. Md. Dec. 23, 2015). We leave the merits of Pinder's claim to the District Court to decide in the first instance.

**\*3 APPLICATION GRANTED.**

TJOFLAT, Circuit Judge, dissenting:

In enacting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq., Congress transferred from the District Courts to the Circuit Courts the power to decide whether a second or successive petition or motion may be brought under §§ 2254 and 2255. The Circuit Courts now perform a gatekeeping function. A Circuit Court may authorize a federal prisoner to file a second or successive § 2255 motion if a panel of the court certifies the motion "to contain ... a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Id. § 2255(h)(2).

Pinder requests our authorization to file a second or successive motion on the theory that Johnson v. United States, 576 U.S. ——, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), applies retroactively through Welch v. United States, 578 U.S. ——, 136 S. Ct. 1257, —— L. Ed. 2d. —— (2016), to the "crime of violence" language of 18 U.S.C. § 924(c) in the way it applies to the "violent felony" language of 18 U.S.C. § 924(e). We grant Pinder's request on the sole ground that he "has made a prima facie showing that his motion 'contain[s] ... a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court.' " Ante at 4 (quoting 28 U.S.C. § 2255(h)(2)) (alteration in the original).

Whether Johnson applies to § 924(c) as it does to § 924(e) presents a pure question of law, which we could readily decide. We do not decide it, though, because, as the majority implies, doing so would be beyond the gatekeeping task Congress has assigned us under AEDPA. Our task is simply to determine whether the movant's motion contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Pinder's motion contains one; hence, authorization is mandatory. The majority makes this abundantly clear. "Whether th[e] new rule of constitutional law invalidates Pinder's sentence must be decided in the first instance by the District Court." Ante at 4. Our order authorizing the filing "in no way binds" the District Court, which "must decide even the § 2255(h) question 'fresh, or in the legal vernacular, de novo.' " Id. In short, the District Court is on its own in deciding the retroactivity question.

Appellate Case: 16-2207 Page: 2 Date Filed: 06/13/2016 Entry ID: 4411259

But our gatekeeping function under § 2255(h)(2) is more robust than the majority recognizes. When faced with a straightforward, pure question of law that is dispositive, it is an abdication of our judicial mantle *not* to decide it. [1] This becomes obvious when one considers what we would have done had the Supreme Court decided *Johnson* while Pinder's case was pending on direct appeal. [2] We would have had two choices, as least in theory. First, even though further development of the record would not have been necessary to decide whether *Johnson* affected the validity of Pinder's conviction, we could have held the appeal in abeyance and remanded the case to the District Court with the instruction that the District Court decide the retroactivity question in the first instance for sentencing purposes—the same instruction today's authorization implies—and then certify its decision to us. The District Court would have decided the retroactivity question, a pure question of law, and made the certification. On receipt of its decision, we would then engage in the same task we gave the District Court. Why? Because we would have been faced with the exact same retroactivity question we sent to the District Court. If we affirmed the District Court's decision, all would have been well and good—the District Court would have gotten it right. If we reversed, the District Court would have wondered in total astonishment why we didn't decide the retroactivity issue in the first place—why we wasted its time and effort and, what's worse, made it appear incompetent. [3]

[1]     To the extent that additional briefing from the parties might be necessary to resolve a motion for a second or successive petition presenting a pure question of law, we could order targeted supplemental briefing on an expedited basis.

[2]     *Johnson* would apply to 18 U.S.C. § 924(e)(2)(B)(ii) convictions like Pinder's in pending cases on direct appeal. *See, e.g., Griffith v. Kentucky*, 479 U.S. 314, 320–26 107 S. Ct. 708, 711–15, 93 L. Ed. 2d 649 (1987).

[3]     If we affirmed, the District Court would still wonder why we didn't resolve the issue initially and avoid wasting that court's time and effort.

 **\*4**  We would not have opted to remand Pinder's case to the District Court had it still been pending when *Johnson* was decided. We would have instead decided the retroactivity issue ourselves. We would have done so for obvious reasons. Considerations of efficiency, our institutional respect for the District Court, the legal profession's respect for our court, and the public's interest in avoiding a judicial game of musical chairs would have required that we decide the retroactivity question straightway.

Now, consider the case at hand and imagine that we were a court of only three judges. As in the direct appeal I posit above, we would have two choices. We could decide the question of law or we could palm it off to the District Court. If we opted to palm it off, the District Court would resolve the retroactivity issue, and the losing side would appeal. [4] And we would be faced once again with the question of whether *Johnson* applied to Pinder's conviction. If we reversed, the District Court would be just as astonished as the District Court in the direct-appeal scenario would have been had we remanded the retroactivity issue instead of deciding it ourselves and then reversed its decision. [5] In the end, however the District Court resolved the retroactivity issue, we would have faced the issue twice, and depending on our decision, the District Court could have been taxed with the case twice.

[4]     If Pinder lost, he would then seek a certificate of appealability under 28 U.S.C. § 2553(c) based on *Johnson*.

[5]     As in the direct-appeal scenario described above, if we affirmed, the District Court would still wonder why we didn't resolve the issue initially and avoid wasting that court's time and effort.

But we aren't a three-judge court. Today's authorization will result in an appeal to another three-judge panel, and that panel will pass judgment on today's decision. The authorization will yield the same inefficiencies, potential for institutional disrespect, and public concern that that would result if, during the direct appeal of a criminal conviction, we palmed off to the District Court a pure question of law that we should have decided in the first instance.

Is it possible that Congress, in drafting AEDPA, envisioned such a waste of judicial time and resources and further delay in the finality of criminal convictions? *Cf. Day v. McDonough*, 547 U.S. 198, 205, 126 S. Ct. 1675, 1681, 164 L. Ed. 2d 376 (2006) (recognizing that " 'judicial efficiency and conservation of judicial resources' " promotes AEDPA's interest in finality (quoting *Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000))). [6] I hardly think so.

Appellate Case: 16-2207   Page: 3   Date Filed: 06/13/2016 Entry ID: 4411259

6    These efficiency concerns, which likewise implicate AEDPA's interest in comity and federalism, are only heightened in the context of 28 U.S.C. § 2254.

**All Citations**

--- F.3d ----, 2016 WL 3081954

**End of Document**    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.